NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ROBERT HOOFMAN,**
*Petitioner,*

v.

**DEPARTMENT OF THE ARMY,**
*Respondent.*

---

2013-3029

---

Petition for review of the Merit Systems Protection Board in No. SF0752110266-I-1.

---

Decided: May 13, 2013

---

ROBERT HOOFMAN, of Anchorage, Alaska, pro se.

ANTONIA R. SOARES, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With him on the brief were STUART F. DELERY, Principal Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and FRANKLIN E. WHITE, JR., Assistant Director.

---

Before NEWMAN, PLAGER, and O'MALLEY, *Circuit Judges.*

PER CURIAM

Robert J. Hoofman *pro se* petitions for review of the final decision of the Merit Systems Protection Board (MSPB or the Board) sustaining his removal for misconduct. *Hoofman v. Dep't of Army*, SF-0752-11-0266-I-1 (M.S.P.B. Sept. 18, 2012). Because the Board correctly sustained Mr. Hoofman's removal, we *affirm*.

## BACKGROUND

Mr. Hoofman was a Construction Control Representative with the U.S. Army Engineer District in Anchorage Alaska. Late one night, Mr. Hoofman was driving home in a government vehicle when, through a chain of events that remains unclear, he stranded the vehicle on top of a sand pile. He tried to free the vehicle from the sand pile by switching between forward and reverse gears but was unsuccessful. The police arrived at the scene at around 1:30 a.m. and observed the stranded vehicle, Mr. Hoofman, and two other passengers inside the stranded vehicle. The police requested that Mr. Hoofman submit to a chemical breath test but he refused. Mr. Hoofman now admits that he had been drinking prior to the police arriving.

The next day Mr. Hoofman pled guilty to a charge of Refusal of Breath Test, which resulted in the Alaska court revoking his driver's license, requiring him to use an ignition interlock system and to spend time in jail. The following morning, Mr. Hoofman contacted his supervisor and requested two weeks of leave due to personal family reasons. He did not tell his supervisor about stranding the government vehicle or his arrest. Mr. Hoofman also contacted a colleague and requested that the colleague retrieve the vehicle, which had been impounded, and not tell anyone. The police released Mr. Hoofman from jail approximately 10 days later, at which time Mr. Hoofman

explained the incident to his supervisor.  Shortly thereafter, the Army proposed Mr. Hoofman's removal based on four charges: 1) driving a government vehicle while under the influence of alcohol; 2) using a government passenger vehicle for other than official purposes; 3) loss of his driver's license for one year and having to use an ignition interlock device for one year after regaining his driving privileges; and 4) attempting to deceive his supervisor.

Mr. Hoofman challenged his proposed removal, but he did not entirely dispute what happened on the night in question; rather he argued that additional facts were necessary to understand the context and sequence of the events.  Mr. Hoofman provided a signed memorandum outlining his version of the story, a portion of which we quote below.

> Mr. Hoofman admits he was driving the Government truck and got it stuck, sometime around 2300 hours.  He states he was driving alone and had not been drinking.  When he could not get the vehicle unstuck, he walked to his apartment that was nearby.  At the apartment, he admitted he consumed alcohol.  About 0100 hrs, walking back to the truck, he met 2 individuals nearby and asked for their assistance to get his truck unstuck; they agreed to help provided Mr. Hoofman provided them a ride (somewhere) afterwards, Mr. Hoofman agreed.  They could not get the vehicle unstuck. . . .  He does not recall when the 2 individuals got into the vehicle.

Resp't's App. A43.

The Army did not think that Mr. Hoofman's explanation was credible and formalized his removal, which Mr. Hoofman appealed to the MSPB.  The Administrative Judge issued an initial decision reversing the Army's removal decision for, amongst other reasons, relying upon

hearsay evidence from a police affidavit[1] and for a lack of evidence supporting Mr. Hoofman's fourth charge. The Army petitioned for review, and the Board reversed the initial decision and sustained the removal action relying only on undisputed and admitted facts. In particular, rather than relying on the police affidavit to establish that Mr. Hoofman had been driving under the influence, the Board relied on Mr. Hoofman's admission from his Statement of Facts found in his Pre-Hearing Submission that he operated the motor vehicle while trying to dislodge it from the sand pile. The Board also upheld the Army after clarifying the nature of the fourth charge as a lack of candor charge rather than a falsification charge.

This petition for review followed. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review is limited. We only set aside Board decisions that are "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

On appeal, Mr. Hoofman argues that we should reverse the Board because the Army did not sustain its burden of proof for charges 1 and 2. According to Mr. Hoofman, the sole evidence the Army relied upon was hearsay, and the Board had to supply additional information to prove the Army's case. We disagree.

---

[1] The affidavit states that one of the two passengers told an officer that Mr. Hoofman "drove them from Tony's Bar" and that Mr. Hoofman was in the driver's seat and the vehicle was running when the officer arrived. Resp't's App. A61.

The Board did not supply information. The parties supplied the information. Indeed, Mr. Hoofman through his declarations and admissions supplied much of the information that he was under the influence of alcohol and operated the vehicle to remove it from the sand pile. The Board simply considered this information and found that it supported the Army's decision by a preponderance of the evidence. *See* 5 U.S.C.A. § 7701.

Mr. Hoofman states that he never admitted that he operated the vehicle to remove it from the sand pile and that his attorney included that description in the Statement of Facts without his knowledge. Mr. Hoofman requests that we dismiss his Statement of Facts and only rely on other evidence that he provided. But Mr. Hoofman cites no legal authority explaining why we should do so. Mr. Hoofman also never sought to retract or correct the Statement of Facts before the Board. At no point did Mr. Hoofman explain how he tried to free the vehicle in a different manner, nor did he explain why the two individuals that he purportedly met by his car were *inside* his vehicle if the three of them were supposedly freeing the vehicle without operating it. Finally, Mr. Hoofman admits that it was "due to [his] own negligence" that "things were written and submitted without [his] input." Pet'r's Rep. Br. at 2. Mr. Hoofman's negligence does not free him from his Statement of Facts. We conclude that substantial evidence supports the Board's conclusions on charges 1 and 2.

Mr. Hoofman next contends that the Army's Petition for Review should be dismissed because the Army misrepresented to the Board the interim relief that it provided to Mr. Hoofman. The Board did not explicitly address this issue in its order. We note, however, the relevant regulation provides discretion to dismiss or not dismiss. 5 C.F.R. § 1201.116(e) ("Failure by an agency to provide the certification required by paragraph (a) of this section with its petition or cross petition for review, or to provide

evidence of compliance in response to a Board order . . . *may* result in the dismissal of the agency's petition or cross petition for review.") (emphasis added); *see also Guillebeau v. Dep't of Navy*, 362 F.3d 1329, 1332 (Fed. Cir. 2004). To the extent that the Army violated 5 C.F.R. § 1201.116(e) when it filed its Petition for Review, such a violation does not warrant dismissal of the Petition under the circumstances of this case.

Mr. Hoofman invokes due process regarding the Board's treatment of his fourth charge. He contends that the Board modified the fourth charge of attempting to deceive his supervisor to a "lack of candor" rather than a "falsification" charge. As the Board noted, however, the words "falsify" or "falsification" appear nowhere in the charge. Moreover, the Army's Notice of Proposed removal suggests that it viewed the charge as a failure to disclose ("[y]ou did not inform Mr. Jong . . .")[2] rather than an affirmative misrepresentation. The Board's interpretation of the charge is not arbitrary, capricious, nor an abuse of discretion.

We have considered each of Mr. Hoofman's remaining arguments, and we conclude that the Board should be affirmed.

### AFFIRMED

COSTS

No Costs.

---

[2] Resp't's App. A36.